UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    CRIMINAL NO. 09-25 (MJD/JSM)

      Plaintiff,

v.                                                             <u>REPORT AND RECOMMENDATION</u>

COREY JERMAINE SCOTT,

      Defendant.

JANIE S. MAYERON, United States Magistrate Judge

      The above matter came on before the undersigned upon defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 22], and Motion to Suppress Statements, Admissions, and Answers [Docket No. 23].

      Kimberly Svendsen, Assistant United States Attorney, appeared on behalf of the United States of America; Caroline Durham, Assistant Federal Public Defender, appeared on behalf of defendant Corey Jermaine Scott, who was personally present.

      Based upon the pleadings, testimony taken at the hearings, exhibits submitted at the hearings, pre-hearing submissions, and the testimony of Officer Robert Heilman and Sergeant Tom Boie, IT IS RECOMMENDED that:

      1.     Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 22] be **DENIED**.

      2.     Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket No. 23] be **DENIED**.

I.      **FACTUAL BACKGROUND**

A.      **Introduction**

Defendant has been indicted on one count of armed bank robbery and one count of being a felon in possession of a firearm.  See Indictment [Docket No. 8], Counts 1 and 2.  Defendant now seeks the suppression of evidentiary items and statements on grounds that they were the "fruit" of his illegal stop and arrest on January 6, 2009, by law enforcement officers.

B.      **Incident of January 6, 2009**

Officer Robert Heilman, with the Brooklyn Center Police Department, testified that on January 6, 2009, at approximately 12:19 p.m., he was performing maintenance on his squad car at the city garage when he received a dispatch that a bank robbery was in progress at a TCF Bank in the city of Brooklyn Center.  Officer Heilman testified that the bank was approximately one-and-a-half miles away from the city garage.

Officer Heilman proceeded to the bank going southbound on Xerxes Avenue and kept an eye out for the northbound traffic coming from the direction of the bank.  On route, Officer Heilman received a description of the suspect from dispatch.  The suspect was an African American male, 25 years old, wearing sunglasses and a stocking hat.  In addition, there was a mention by dispatch that a weapon was displayed or seen at the bank.  However, Officer Heilman did not have a description of the suspect's vehicle.

Officer Heilman testified that at the 6400 block of Xerxes Avenue he observed a brownish Chevrolet van traveling northbound on Xerxes Avenue coming from the direction of the bank.  Officer Heilman estimated that the van was .6 miles from the

bank and that he first encountered the van approximately 2-4 minutes after receiving the dispatch regarding the robbery.  Officer Heilman testified that the driver of the van was an African American male approximately 25-30 years old with scruffy facial hair.  Officer Heilman did not observe any sunglasses or stocking hat worn by the driver.  No other occupants were seen in the van.  Officer Heilman and the driver made eye contact and then the driver immediately looked away.  The occupant's demeanor in looking at Officer Heilman and then looking away, coupled with the description provided by dispatch, raised Officer Heilman's suspicions that the driver of the van was the bank robbery suspect.  Officer Heilman made a U-turn going northbound on Xerxes and began to follow the van.  Officer Heilman did not turn on his lights and siren at this point, but merely followed the van and ran the plates, which came back to a company.

Officer Heilman testified that the van took a left onto Shingle Park Drive, which eventually became 69th Avenue.  Officer Heilman received additional information from dispatch that the GPS tracking for the money taken from the bank had been activated and had tracked the money to 69th Avenue and Ewing Avenue.[1]  According to Officer Heilman, he had just past 69th Avenue and Ewing Avenue while following the van when he received this dispatch on the location of the money from the bank.  Officer Heilman noted that while the was van traveling normally at this point, the driver kept looking back at him through the driver's side mirror.

---

[1]     Officer Heilman testified that the information regarding the GPS tracking was being conveyed from a company hired by TCF to do the tracking to the police dispatcher and then to him.

Officer Heilman then observed the van take a right onto Brooklyn Boulevard, at which time he received an update from dispatch that the GPS tracking had placed the money on Brooklyn Boulevard traveling in the same direction as the van. The van continued to Regent Avenue where it got into the left hand turn lane of Brooklyn Boulevard and stopped at the light. Dispatch relayed that the GPS tracking had the vehicle stopped at the intersection of Regent Avenue and Brooklyn Boulevard. Officer Heilman testified that while he observed other vehicles while following the van, none of the vehicles took the same path as the van.

When the traffic light displayed a green arrow, the suspect van made a U-turn. Officer Heilman turned on his siren and lights and followed the van. Officer Heilman testified that the van accelerated and swerved to avoid another police squad car that was attempting to block his path. See also Government Ex. 2 (DVD recording of the stop). Officer Heilman then performed two "pit maneuvers"[2] and was able to stop the van. There were approximately 20 police officers on scene. The suspect was given orders by police, however, it took the driver of the van approximately 5 minutes to exit the van.

Sergeant Tom Boie, with the Brooklyn Center Police Department, testified that when he got to the scene of the stop, defendant was already on the ground. The back of the van was searched, as officers could not see in the back of the van and were concerned about their safety. The driver was handcuffed and allowed to stand.

---

[2]     The pit maneuver involved Officer Heilman using his squad car to hit the sides of the van (towards the back end of the vehicle) at a slow speed to make it spin 180 degrees, thereby cutting off the gas to the vehicle and stalling it.

Sergeant Boie stated that officers had probable case to believe that the driver of the van was involved in the bank robbery, prior to his being handcuffed, based on the GPS information. The driver had a "wad" of money in his right front pant pocket.  Sergeant Boie retrieved the money from the driver.  Sergeant Boie also testified that he looked into the opened driver's side door of the van and observed a silver gun on the floorboard.

Subsequently, a January 6, 2009 search warrant was issued for the van by a Hennepin County judge.  See Government Ex. 1.

## II.    DISCUSSION

Defendant's counsel argued at the hearing[3] that all the evidence and statements taken after his illegal stop and arrest should be suppressed on grounds that such evidence seized and statements made were the "fruit of the poisonous tree."[4]  Thus, the issue before the Court is whether the stop and arrest of defendant on January 6, 2009 were reasonable under the Fourth Amendment to the Constitution.

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  "It is well established that a roadside traffic stop is a 'seizure'

---

[3]    Defendant and the Government were given the opportunity to submit post-hearing briefs to the Court to address the issues presented by defendant's motions. Both parties subsequently informed the Court that they were relying on the record and did not file briefs.

[4]    Defendant's counsel represented at the hearing that defendant was not challenging the January 6, 2009 search warrant issued for the van by a Hennepin County judge (i.e., whether it was supported by probable cause), but merely sought the suppression of any evidence obtained via the warrant as the fruit of the alleged illegal stop and arrest.

within the meaning of the Fourth Amendment." United States v. Jones, 269 F.3d. 919, 924 (8th Cir. 2001).  Probable cause to support a traffic stop exists when a reasonable officer, confronted with the facts known to the officer at the time of the traffic stop, could have believed that there was a fair probability that a violation of law had occurred.  See United States v. Andrews, 454 F.3d 919, 921 (8th Cir. 2006) (citations omitted).  This Court is required to give law enforcement officers "substantial latitude in interpreting and drawing inferences from factual circumstances." United States v. Washington, 109 F.3d 459, 465 (8th Cir. 1997) (citations omitted).

Similarly, a warrantless arrest requires probable cause.  See United States v. Adams, 346 F.3d 1165, 1169 (8th Cir. 2003).  "'To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers at the time of the arrest.'"  Id. (quoting United States v. Kelly, 329 F.3d 624, 628 (8th Cir. 2003)). "We will find that probable cause existed at the time of arrest when the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested." Id. (citing same); see also United States v. Houston, 548 F.3d 1151, 1154 (8th Cir. 2008) (quoting Adams, 346 F.3d at 1169); United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003) (finding that probable cause "'exists when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested.'") (quoting United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001)).  Law enforcement officers

6

are not required to have enough evidence to justify a conviction before they make a warrantless arrest, however, a "bare suspicion of criminal activity" is not enough to establish probable cause. See Adams, 346 F.3d at 1169-70 (citing United States v. Morales, 923 F.2d 621, 624 (8th Cir. 1991)). Courts must give law enforcement officers "'substantial latitude in interpreting and drawing inferences from factual circumstances,' but such latitude is not without limits.'" Id. at 1170 (quoting Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999), quoting United States v. Washington, 109 F.3d 459, 465 (8th Cir. 1997)).

In this case, Officer Heilman testified that the van driven by defendant was coming from the direction of the TCF Bank, and that defendant shared some of the characteristics of the robber described by dispatch (African American male of approximately 25 years of age), acted suspiciously when he made eye contact and looked away, and continued to look to his side mirror as he was followed by the officer. Then Officer Heilman received the information from the GPS tracking device placed with the bag of money taken from the bank, including that the device was stopped at the intersection of Regent Avenue and Brooklyn Boulevard at the same time that Officer Heilman was at this intersection behind the suspect van. All of this information, coupled with Officer Heilman's testimony that he observed no other vehicles following the same path as the van, leads this Court to find that officers had sufficient probable cause to stop and arrest the driver of the van as the person responsible for robbing the TCF Bank.

For all of the reasons stated above, this Court finds that the totality of the circumstances establishes that there was adequate probable cause to stop and arrest defendant on January 6, 2009.  As such, defendant's motions to suppress evidence and statements should be denied.

## III.     RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein,

**IT IS RECOMMENDED THAT:**

1.      Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 22] be **DENIED**.

2.      Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket No. 23] be **DENIED**.

Dated:      April 9, 2009

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 27, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.   All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **April 27, 2009**.